### 75846. BEAL v. THE STATE.
(368 SE2d 567)

BIRDSONG, Chief Judge.

John Anthony Beal appeals his conviction for voluntary manslaughter and aggravated assault. He urges the general grounds, to wit, that the verdict is contrary to the evidence and without evidence, and is contrary to law, justice and equity. *Held*:

The deceased Bobbie Lou Sanders, age sixteen and a runaway, was staying with four other persons at the Clermont Hotel on Ponce de Leon Avenue in Atlanta. These others, some of whom were also runaways, were Bobbie's boyfriend Brian (Curtis) Johnson; another girl, Tippy Jo Fink, and her boyfriend Kurt Pruitt; and another young man, Jason Deal. On January 17, 1987, these persons were assiduously engaged in purchasing and drinking beer, when they met up with appellant Beal, whom they did not know. The testimony of these persons (excluding the deceased) varies somewhat in detail but consistently showed the following: Beal was asked to buy some beer and he did, going with Bobbie Lou, Brian, and Tippy Jo to a store near the hotel. When the group returned to the hotel, appellant Beal either was bidden to accompany the girls to their room on the fourth floor, or he followed uninvited. Brian loitered behind.

In the group's hotel room, appellant Beal sat on the bed with the two girls Bobbie and Tippy Jo; Bobbie asked him for a beer. Jason Deal was more or less passed out, or sleeping, on another bed; Kurt Pruitt had gone into the bathroom. When Brian arrived at the room, Tippy Jo asked him to get rid of Beal, who apparently had become an annoyance. What followed occurred so quickly as to produce some varying accounts, but the jury was authorized to conclude that after a

brief verbal exchange, appellant Beal got up with his beer and as he was leaving knocked Brian into a dresser. Brian pulled out a dresser drawer and followed appellant Beal into the hall where he hit Beal in the head with the dresser drawer, shattering the drawer. Beal turned around and, having produced a knife, stabbed Brian. Kurt Pruitt then came out of the room and attempted to pull Brian away from appellant, and he was stabbed. Bobbie Lou Sanders was stabbed in the left chest and back, either when the struggling group backed up past the room door where she stood, or, according to other accounts (including defendant's) when she went towards appellant and jumped up to hit him, or after she slapped him in the face. There was also testimony that either as Bobbie Lou was standing at the room door or as she was running beside Kurt and Brian while appellant chased Kurt and Brian down the hall, appellant grabbed Bobbie Lou and pulled her up into the air and stabbed her; or he grabbed her, pushed her up against the wall and stabbed her twice.

There was testimony that all of this occurred in a matter of seconds, but a policeman, Officer R. E. Gordon, who lived on the fourth floor of the hotel as part of a security arrangement, was downstairs when he first heard a commotion; he got on the elevator and stopped at each floor to examine the hallways, finding nothing. He arrived on the fourth floor where he saw nothing unusual, and went to his room for several minutes until he heard the commotion start up again. He went back out into the hall and observed appellant walking down the hall, waving a knife, saying, "Come on, you want some of this, come on, you want some of this." Officer Gordon identified himself as a police officer and told appellant to turn around; appellant turned around and took a couple of steps toward Gordon with the knife in his hand. Gordon told him to drop the knife, but appellant took several more steps toward Gordon until Gordon again ordered him to drop the knife, and he did so.

The jury obviously rejected the defendant's explanation that he acted in self-defense or by accident. All the other evidence in the case when it is reconciled, or even when it is considered in all its variety as descriptions of an event that happened too chaotically and too quickly to produce one version, is consistent with the statutory definition of voluntary manslaughter, as "caus[ing] the death of another human being under circumstances which would otherwise be murder and [acting] solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder." OCGA § 16-5-2 (a).

After reviewing the evidence, we find a reasonable trior of fact could rationally find in this evidence proof of voluntary manslaughter as specifically described in § 16-5-2 (a), and aggravated assault beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED APRIL 8, 1988.

*J. Douglas Willix*, for appellant.

*Lewis R. Slaton, District Attorney, Alfred D. Dixon, Joseph J. Drolet, Benjamin H. Oehlert III, Assistant District Attorneys*, for appellee.